# EXHIBIT A

CASE NO.: 2:13-CV-60-BO

| | |
|---|---|
| RED WOLF COALITION,<br>DEFENDERS OF WILDLIFE, and<br>ANIMAL WELFARE INSTITUTE,<br><br>   Plaintiffs,<br><br>v.<br><br>JIM COGDELL, JOHN LITTON CLARK,<br>JOE C. BARKER, III, WES SEEGARS, NAT<br>T. HARRIS, JR., JOSEPH BUDD, DAVID W.<br>HOYLE, JR., WENDELL (DELL) MURPHY,<br>MARK CRAIG, THOMAS A. BERRY,<br>GARRY SPENCE, JOHN T. COLEY, IV,<br>VERNON (RAY) CLIFTON, JR., THOMAS<br>L. FONVILLE, RICHARD EDWARDS,<br>MICHELL HICKS, TIMOTHY L. SPEAR, in<br>their official capacities as Commissioners of<br>the North Carolina Wildlife Resources<br>Commission; GORDON S. MYERS, in his<br>official capacity as Executive Director of the<br>North Carolina Wildlife Resources<br>Commission,<br><br>   Defendants. | **SETTLEMENT AGREEMENT** |

This Settlement Agreement ("Agreement") is entered into by and between Plaintiffs RED WOLF COALITION, DEFENDERS OF WILDLIFE, AND ANIMAL WELFARE INSTITUTE and Defendants JIM COGDELL, JOHN LITTON CLARK, JOE C. BARKER, III, WES SEEGARS, NAT T. HARRIS, JR., JOSEPH BUDD, DAVID W. HOYLE, JR., WENDELL (DELL) MURPHY, MARK CRAIG, THOMAS A. BERRY, GARRY SPENCE, JOHN T.

COLEY, IV, VERNON (RAY) CLIFTON, JR., THOMAS L. FONVILLE, RICHARD EDWARDS, MICHELL HICKS, TIMOTHY L. SPEAR, in their official capacities as Commissioners of the North Carolina Wildlife Resources Commission ("NCWRC") and GORDON S. MYERS, in his official capacity as Executive Director of the NCWRC:

WHEREAS, in 1967, the red wolf was designated an endangered species under the Endangered Species Preservation Act of 1966, the precursor to the federal Endangered Species Act of 1973 ("ESA"), 16 U.S.C. §§ 1531 et seq.;

WHEREAS, in 1987, four pairs of red wolves bred in captivity were released into the Alligator River National Wildlife Refuge in eastern North Carolina as a nonessential experimental population under Section 10(j) of the ESA, 16 U.S.C. § 1539(j);

WHEREAS, in the Complaint, Plaintiffs contend that Defendants are in violation of the ESA by authorizing coyote hunting in Dare, Hyde, Tyrrell, Beaufort, and Washington counties (hereinafter, "Red Wolf Recovery Area");

WHEREAS, the NCWRC has worked with the United States Fish and Wildlife Service ("USFWS") to broaden collaboration in the conservation and management of all canid species, including red wolves, on the Albemarle Peninsula;

WHEREAS, the NCWRC has the authority to regulate hunting of non-endangered wildlife in the State of North Carolina and has used this authority to allow the hunting of coyotes;

WHEREAS, Defendants contend that the Court lacks jurisdiction over them on various grounds including sovereign immunity and lack of subject matter jurisdiction, and further contend that they are not in violation of the ESA; and

WHEREAS, Plaintiffs and Defendants agree that they have reached a settlement that they consider to be a just, fair, adequate, and equitable resolution of the disputes set forth in Plaintiffs' Complaint;

NOW, THEREFORE, IT IS STIPULATED BY AND BETWEEN THE PARTIES AS FOLLOWS:

1. Defendants shall initiate temporary and permanent rulemaking to modify **15A NCAC 10B .0219** to read as set forth in Attachment A to this Agreement.

   a. The rulemaking described in ¶1 and Attachment A of this Agreement shall be undertaken pursuant to Chapter 150B of the North Carolina General Statutes, following the below outlined timeline:

   **Temporary Rule**

   - Within 21 business days after Court's Order modifying injunction:
       NCWRC votes on Notice of Text
   - 7 business days after vote on Notice of Text:
       NCWRC initiates public comment period
   - 15 business days after initiation of public comment period:
       Public comment period closes
   - Within 37 business days after vote on Notice of Text:
       NCWRC reviews comments and adopts rule
   - 17 business days after rule adopted:
       Approved rule becomes effective

   **Permanent Rule**

   - Within 7 business days after Court's Order modifying injunction:
       NCWRC submits fiscal note to Office of State Budget and Management ("OSBM")
   - Within 21 business days after approval of fiscal note by OSBM:
       NCWRC votes on Notice of Text
   - Within 30 business days after vote on Notice of Text:
       NCWRC initiates public comment period
   - 60 days after initiation of public comment period:
       Public comment period closes
   - Within 15 business days from end of comment period:
       NCWRC reviews comments and adopts rule
   - 45 days after NCWRC adopts rule:
       Approved rule becomes effective

b. Defendants shall notify Plaintiffs immediately if they become aware of any letters of objection filed pursuant to the North Carolina Administrative Procedure Act, any disapproval bills introduced in the North Carolina General Assembly, or any other developments that may delay or hinder implementation of the temporary or final rules described in ¶1.

2. If the Rule set out in Attachment A is adopted as a temporary and final regulation within the timeline set out in ¶1, or within the soonest feasible time thereafter in the case of a delay unavoidable by Defendants, Plaintiffs shall, within 15 days of the effectiveness of such final regulations, move for voluntary dismissal of their action against Defendants with prejudice. Such dismissal shall not prejudice Plaintiffs' ability to bring suit for any future violations of the ESA by the NCWRC Commissioners or its Executive Director. In the event that Plaintiffs bring suit against Defendants for any future violations of the ESA related to their authorization of coyote hunting in the Red Wolf Recovery Area, this Agreement shall terminate and be null and void.

3. Defendants shall implement as soon as practicable but not later than November 1, 2014, a telephonic and electronic system to facilitate reporting requirements for the shooting of coyotes and the incidental shooting of red wolves or red wolf-coyote hybrids. Such reporting requirements shall include, but not be limited to:

    a. Date, time, location (e.g., hunt area), presence of radio collar, and measurements for all coyotes, red wolves, or red wolf-coyote hybrids shot;
    b. Coyote gunshot shall be reported to the NCWRC within 24 hours; and
    c. Red wolf gunshot shall be reported to the USFWS or NCWRC within 24 hours, consistent with the requirements of 50 C.F.R. § 17.84(c).

4. Defendants shall implement as soon as practicable but not later than November 1, 2014, a "Canid Cooperator Program" (similar to NCWRC's existing "Black Bear Cooperator Program") whereby coyote hunters may voluntarily submit hair samples from gunshot coyotes, red wolves, and red wolf-coyote hybrids for scientific analysis.

5. For a period of five years starting from the date the reporting program provided for in ¶3 is implemented, Defendants shall prepare and provide to Plaintiffs every six (6) months a written report compiling all the data received from the reports submitted by hunters pursuant to the reporting requirements described in ¶3, as well as any data from the "Canid Cooperator Program" defined in ¶4.

6. Defendants shall, on or before November 1, 2014, issue a permit authorizing the USFWS to trap, sterilize, and release coyotes on private land within the Red Wolf Recovery Area. Such trapping, sterilization, and release shall require the written permission of the landowner and may require GPS tracking technology, according to a protocol agreed upon between the USFWS and Defendants. In the event that the NCWRC and USFWS are unable to reach agreement on such a protocol, Defendants shall issue by November 1, 2014, a permit to the USFWS allowing it to trap, sterilize, and release coyotes on any lands for which it obtains the written permission of the owner of the land on which the coyote is trapped. If, after issuing a permit to the USFWS to trap, sterilize, and release coyotes based on landowner permission, Defendants reach agreement with the USFWS on a different protocol for the program, Defendants may substitute a new permit establishing the agreed-upon protocol.

7. Defendants shall initiate permanent rulemaking to list the red wolf (*Canis rufus*) as a threatened species under 15A NCAC 10I .0104 because the wild red wolf population in

North Carolina is treated as a threatened species pursuant to 16 U.S.C. § 1539(j)(C). Such rulemaking shall be completed by August 1, 2015.

8. Defendants shall undertake outreach efforts to educate the public about the status of red wolves, legal fines and penalties for the unauthorized take of red wolves, the similarity in appearance between red wolves and coyotes, and reporting requirements for the take of red wolves under state and federal law. These efforts shall include, but not be limited to:

    a. Inclusion of a section on red wolves and coyotes in the annual North Carolina Inland Fishing, Hunting, and Trapping Regulations Digest ("Digest");

    b. Insertion of text in the Digest cautioning hunters to ensure they have properly identified their target species;

    c. Emails to the NCWRC's email database regarding the similarity of appearance and potential for mistaken identity between coyotes and red wolves;

    d. Distribution of printed or electronic materials to hunters that provide information to distinguish between red wolves and coyotes, and inform hunters about the "Canid Cooperator Program," as defined in ¶4 of this Agreement, as well as standardized methods for taking measurements and hair samples of gunshot coyotes, red wolves, and hybrids; and

    e. Emails to the NCWRC's email database and publication of articles on the NCWRC website to educate the public about red wolves that have been injured or killed as a result of gunshot and to seek the public's assistance in identifying those responsible for illegal takes.

9. Any notices required or provided for by this Agreement shall be made in writing and sent to the following.

    For Plaintiffs:

        Sierra B. Weaver
        Southern Environmental Law Center
        601 West Rosemary Street, Suite 220
        Chapel Hill, NC 27516-2356
        919-967-1450
        sweaver@selcnc.org

    For Defendants:

        Erica Garner
        General Counsel

NC Wildlife Resources Commission
1701 Mail Service Center
Raleigh, NC 27699-1701
919-707-0014
erica.garner@ncwildlife.org

10. Within 15 days of the execution of this Agreement, the parties will file a joint motion to modify the terms of the Preliminary Injunction entered by the Court on May 13, 2014. The parties will request that the injunction be modified to reflect the terms of Attachment A and that the case be stayed with the modified injunction in place until the dismissal by Plaintiffs provided for in ¶2. Throughout the duration of the stay, the parties shall file status reports with the Court every six (6) months.

11. The parties agree that they will bear their own attorney fees and costs associated with work performed up to and including entry and execution of this Agreement. The parties reserve the right to seek attorney fees and costs incurred subsequent to entry of this Agreement.

12. The parties agree to cooperate fully, to execute any and all supplementary documents necessary to effectuate this Agreement, and to take all additional actions that may be necessary to give full force and effect to the terms of this Agreement.

13. The undersigned agree that this Agreement does not constitute an admission of fault, wrongdoing, or liability by any party. Defendants do not waive their claim of sovereign immunity by entering this Agreement.

14. In the event of breach of this Agreement, the parties have an action at law in any court having jurisdiction over the matter, provided that any breach regarding the provisions subject to rulemaking according to ¶1 of this Agreement shall be subject to the continuing jurisdiction of the Court. By entering into this Agreement, Defendants are not waiving any defense to such action. This Agreement is not enforceable by third parties.

15. The parties agree that this Agreement was negotiated in good faith and that this Agreement constitutes a settlement of claims that were denied and disputed by the parties. By entering into this Agreement, the parties do not waive any claim or defense.

16. The parties hereby acknowledge that the individual executing the Agreement on his/her behalf is authorized to execute this Agreement on his/her behalf and to bind the respective entities to the terms contained herein and that he or she has read this Agreement, conferred with his or her attorney, fully understands its contents, consents to the settlement of the claims on the terms set forth herein, and does so in reliance upon his or her own judgment and advice of his or her attorney and not in reliance on any other representations or promises of the parties or their representatives or attorneys. The parties represent that any necessary corporate and governmental approvals necessary for the binding execution of this Settlement Agreement have been obtained. The persons executing this Settlement Agreement warrant and represent that they have full authority to sign this Settlement Agreement on behalf of the party or parties for whom they are acting. This Settlement Agreement shall be binding upon the parties, their successors and assigns.

17. The Defendants do not waive any statutory or regulatory authority or duties granted to them under State law by entering this Agreement.

18. The Agreement and all of its terms shall terminate and be null and void in the event of discontinuation of the Red Wolf Reintroduction Program in the Red Wolf Recovery Area or in the event that the Court denies the parties' joint motion to modify the terms of the Preliminary Injunction entered by the Court on May 13, 2014.

IN WITNESS WHEREOF, this Agreement is executed in counterparts effective on the last date of execution indicated on the subsequent signature pages.

RED WOLF COALITION

By: *Kim Wheeler* (signature)
Title: Executive Director
Date: 10.15.14

DEFENDERS OF WILDLIFE

By: Michael Senatore
Title: General Counsel
Date: 10/16/14

ANIMAL WELFARE INSTITUTE

By: _____
Title: President
Date: 10/5/14

JIM COGDELL, JOHN LITTON CLARK, JOE C. BARKER, III, WES SEEGARS, NAT T. HARRIS, JR., JOSEPH BUDD, DAVID W. HOYLE, JR., WENDELL (DELL) MURPHY, MARK CRAIG, THOMAS A. BERRY, GARRY SPENCE, JOHN T. COLEY, IV, VERNON (RAY) CLIFTON, JR., THOMAS L. FONVILLE, RICHARD EDWARDS, MICHELL HICKS, TIMOTHY L. SPEAR, in their official capacities as Commissioners of the North Carolina Wildlife Resources Commission; GORDON S. MYERS, in his official capacity as Executive Director of the North Carolina Wildlife Resources Commission

By: _____
Title: Executive Director
Date: 15 October 2014

# ATTACHMENT A

15A NCAC 10B .0219 is amended as follows:

**15A NCAC 10B .0219   COYOTE**

(a) This Rule applies to hunting coyotes. In all counties of the State, except those counties specified in Paragraph b, the following apply:

    (1) There is no closed season for taking coyotes.

    (2) Coyotes may be taken on private lands anytime during the day or night.

    (3) Coyotes may be taken on public lands without a permit from the hours of one-half hour before sunrise until one-half hour after sunset, and from one-half hour after sunset to one-half hour before sunrise by permit only.

(b) In the counties of Dare, Hyde, Washington, Tyrrell and Beaufort, the following apply:

    (1) Coyote hunting on public lands is prohibited, except that coyotes may be taken on State-owned game lands by the holder of a permit or license for a specific special hunt opportunity for coyotes authorized by G.S. 113-264(d). Any special hunt for coyotes pursuant to G.S. 113-264(d) shall only allow hunting from the hours of one-half hour before sunrise until one-half hour after sunset. Contests or competition coyote hunts on public lands are prohibited. If, within a calendar year, two or more red wolves are shot by one or more hunters with a valid special hunt permit for coyotes on State game lands within the five counties subject to this rule, all special hunt opportunities for coyotes on State game lands within those five counties shall be suspended for one calendar year.

    (2) There is no closed season for taking coyotes on private lands. Coyotes may be taken on private lands from the hours of one-half hour before sunrise until one-half hour after sunset only.

    (3) Coyotes may be taken on private lands by permit only, and any take shall be reported within 24 hours to the Commission.

    (4) Coyote hunting permits are in addition to hunting licenses. Individuals exempted from license requirements under the provisions specified in G.S. 113-276 must still acquire the coyote hunting permits to hunt coyotes in the counties specified in this Paragraph b. Coyote hunting permits are valid for one calendar year and subject to annual renewal. These permits are non-transferable. Permit holders must submit their harvest reports in order to be eligible for permit renewal.

(c) There are no bag limit restrictions on coyotes.

(d) Manner of Take. Hunters may use electronic calls and artificial lights.